```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CAROL ALLISON,

                          Plaintiff(s),                    **ORDER**
                                                           CV 04-0025 (JS) (WDW)
         -against-

UNUM LIFE INSURANCE COMPANY and its
successors, COMPUTER ASSOCIATES INT'L,
INC. LONG TERM DISABILITY INCOME PLAN
and PLAN ADMINISTRATOR of COMPUTER
ASSOCIATES INT'L, INC. LONG TERM
DISABILITY INCOME PLAN,

                          Defendant(s).
-------------------------------------------------------------X
```

**WALL, Magistrate Judge:**

Before the court is a renewed motion by the plaintiff to expand the administrative record to include documents submitted to the defendants by the plaintiff in October 2003, or in the alternative, to remand the claim to the claim administrator to conduct a "re-review" of Ms. Allison's claim. The defendants oppose both the expansion of the record and a remand, but suggest that reassessment pursuant to a Regulatory Settlement Agreement is available to the plaintiff. The scope of the Administrative Record was addressed in this court's order of 2/11/05, wherein the parties were urged to try to resolve the issue. They tried, but were unable to do so. Familiarity with the earlier order and the underlying facts is assumed.

For the reasons set forth herein, the motion is denied as to expansion of the record and remand. It is the plaintiff's choice whether to pursue reassessment or to proceed with this litigation.

## DISCUSSION

The plaintiff advances several grounds for supplementation of the administrative record or remand to First Unum for a review that would include the October 2003 documents. Each ground will be considered.

**1.) Did First Unum in fact conduct a review based on the October 2003 documents?**

In the earlier order, the undersigned noted that an administrative record properly consists of those documents reviewed by a plan or claims administrator in rendering the decision before the court. If certain documents were not reviewed in rendering that decision, they cannot become part of the administrative record. The plaintiff seeks expansion of the Administrative Record on the ground that the documents she seeks to have included were, in fact, considered by the defendants on a "re-review" of Allison's claim that took place after October 2003, when plaintiff sent documents to Peter Pellenz, a Settlement Specialist at First Unum. Plaintiff's counsel, Eve-Lynn Gisonni, had been put in touch with Mr. Pellenz by another Unum employee, Johnathan Butler. The defendants argue, in essence, that although Allison did send the documents to Pellenz, there was no further appellate review by Pellenz, whose job does not allow him to render appellate decisions, and that the final determination regarding Allison's claim was rendered in December 2002.

The plaintiff asserts that plaintiff's counsel and Mr. Pellenz spoke in November 2003, and that Mr. Pellenz looked at the Allison file at that time. 3/25/05 Gisonni Letter at 2. Prior to his "review" of the file, Pellenz had not realized that the claim had already been appealed and denied several times. *Id.* at 2-3; *see also* Pellenz. Aff., Defs. Ex. F, at ¶¶8-9. According to the plaintiff, he told plaintiff's counsel on November 10, 2003 that he would submit the information

sent to him in October 2003 to the appeals unit to re-review the claim. *Id.* at 3. On November 25, 2003, Mr. Pellenz allegedly indicated to plaintiff's counsel that Unum was not interested in settlement of the claim. *See* Pl's Ex. C. As proof of these conversations, the plaintiff has submitted handwritten notes taken by counsel. *See* Pl's Ex. C.

The affidavits of Johnathan Butler and Peter Pellenz state that Mr. Butler, who had prior contacts with Ms. Gisonni on unrelated matters, gave her Mr. Pellenz's name when she asked for a contact with whom she could discuss settlement of the Allison claim. Pellenz notes that the documents sent to him in October 2003 were labeled in a cover letter as being "FOR SETTLEMENT PURPOSES." Pellenz Aff., Def's Ex. F at ¶4. Without looking at the documents, he states, he contacted the claim department to request the Allison claim file. He did not, he asserts, send the box of documents sent by the plaintiff to the claims department, but merely requested the Allison file. He was called by a representative of the appeals department, who told him that the claim had been denied and the denial upheld on appeal, and that the file would not be sent to him. He never reviewed the documents sent by the plaintiff, and, he states, they remain in his office to this day, never having been reviewed by anyone at Unum. Pellenz did reject Allison's request for a settlement, but did not conduct a review or render a determination on her claim.

Having considered both the affidavits and Ms. Gisonni's notes, the court finds that Pellenz did not review Allison's file, and there is no evidence that anyone else at First Unum reviewed it during or after October 2003. Ms. Gisonni's handwritten notes notwithstanding, it would appear that Pellenz was discussing a possible settlement with Gisonni, but that even that discussion could go no further when he learned that the denial had been upheld on appeal. Ms.

3

Gisonni may have misunderstood the nature of Pellenz's involvement, but that misunderstanding does not make the documents part of the administrative record.

### 2.) Allison's Alleged Reliance on First Unum's Representations:

The plaintiff argues that, even if the claim was not officially re-reviewed, she was led to believe that it was, relied on that belief, and is prejudiced by being misled. *See* 3/25/05 Gisonni Letter at 4. Specifically, the plaintiff argues that she proceeded to litigation based on Pellenz's representation that an additional review had been conducted that included the October 2003 documents. *Id.* Now, she says, if the court finds that no review was conducted, she has been deprived of an opportunity to get the full file before the court.

The defendants address this argument as one for estoppel, although the plaintiff does not employ that term. The court agrees with the defendant that there is no basis for finding that the defendants are estopped from denying that it reviewed the October 2003 documents. There is no evidence that First Unum represented that it had made such a review, other than Ms. Gisonni's notes from her conversation with Mr. Pellenz and her memory of their discussion. Even assuming that there was a misunderstanding of the role Mr. Pellenz was playing regarding Ms. Allison's claim, the plaintiff has not indicated any action that she could or would have taken if she had understood that no re-review for appeal purposes was being done. And, the plaintiff was insistent in her communications with First Unum, from May 2003 to the October 2003 shipment of the documents with the proviso that they were for settlement purposes, that she was not at that time pursuing an appeal. The court finds no basis for finding that the plaintiff was prejudiced by her misconception about whether or in what way her file, including the documents sent in October 2003, was being reviewed.

**3.) First Unum's Failure to Respond to the December 23, 2005 Letter:**

Allison further argues that the defendants never contested the content of Ms. Gisonni's December 23, 2003 letter to Mr. Pellenz, which referenced the plaintiff's "supplementation of the administrative record" and noted Mr. Pellenz's alleged communication to plaintiff's counsel that "the file was again reviewed by personnel who were familiar with Ms. Allison's claim." Pl's Ex. B. That letter also confirmed that First UNUM was "upholding the adverse benefit determination of June 2002," and ended by saying, "If this is not the case, please call me immediately." The defendants' failure to contest the letter, the plaintiff suggests, supports a finding that the defendants did consider the documents at issue. The court disagrees and finds first, that the defendants had no obligation to respond to the letter, and that, moreover, the referent intended by the word "this" in the plaintiff's phrase "if this is not the case," is not clear. The obvious interpretation is that "this" refers to the factual statement immediately preceding it, that is, First UNUM's adherence to the June 2002 determination, and the defendants would have had no reason to correct plaintiff's impression of that decision, inasmuch as the defendants did then, and continue to now, stand by that determination. If "this" was intended to refer to the supplementation of the record or the fact of a re-review included the October 2003 documents, that intent is not clear from the phrasing.

**4.) Did First Unum "Overlook" Information?**

The plaintiff argues that in cases in which a claims administrator has failed to consider material information concerning a claim, courts have remanded the claim for re-consideration including the overlooked information. 3/25/05 Gisonni Letter at 4. The material information that the claims administrator here allegedly overlooked is, presumably, that contained in the

5

documents submitted by the plaintiff in October 2003. First Unum, cannot, however, have been expected to review, prior to its final determination in December 2002, information that it did not have until October 2003, and that failure cannot provide the basis for a remand.

### 5.) Did First Unum's Withholding of Evidence Deprive Allison of a "Full and Fair Review"?

The plaintiff argues, more generally, that the claim should be remanded because Allison never received a full and fair review of her claim. The plaintiff bases this argument on the allegation that First UNUM failed to provide Allison with her entire claim file prior to Allison's submission of information to First UNUM in July 2002. A brief review of the time line of the claim determination is helpful in understanding this argument. First Unum terminated Allison's benefits on June 26, 2002. Def. Ex. A . Allison requested further review, and on July 24, 2002, First Unum notified Allison that the denial was being upheld. Def. Ex. B. Over the next few months, Allison submitted additional medical information, which was reviewed, and denial of Allison's claim was finally upheld, by letter dated December 26, 2002.

In between June 2002, when Allison's payments were discontinued, and December 2002, when First Unum says the claim was finally denied and the appeal exhausted, there was a series of communications between Allison and First Unum, with Allison submitting additional information and First Unum reporting in detail on its continuing review. After that time, the next communication to First Unum was from Ms. Gisonni in May 2003, requesting documents. More requests for documents followed. During various exchanges, Ms. Gisonni requested, and First Unum provided, acknowledgement that the requests for documents were not intended as requests for appeal. By letter dated July 18, 2003, Sandra Kaserman, Lead Appeals Specialist, told Ms.

Gisonni that the entire Allison claim file would be sent to her, and a cover letter dated July 24, 2003 states that a complete copy of the claim file was sent on that date.

The plaintiff, on this motion, avers that Ms. Kaserman did not provide Ms. Allison with a complete copy of her claim file, which violated ERISA and deprived Allison of a full and fair review. Pl's Reply Mem. at 4. The relevant statute is 29 U.S.C. §1133, which provides as follows:

> **Claims procedure**
> In accordance with regulations of the Secretary, every employee benefit plan shall –
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

This provision, Allison argues, requires the claim administrator to provide the participant an opportunity to examine the evidence on which a denial was based and to submit written rebuttal documentary evidence or written comments. Pl's Reply Mem. at 3 (citing *Hammer v. First UNUM Life Ins. Co.,* 2004 U.S. Dist. LEXIS 16893, *12, 13 (S.D.N.Y. Aug. 24, 2004)). "Courts have invested 'full and fair review'" with a requirement, *inter alia*, that the fiduciary must inform the "participant of what evidence he relied on and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence." *Hammer*, 2004 U.S. Dist. LEXIS at *13 (quoting *Neely v. Pension Trust Fund,* 2003 U.S. Dist. LEXIS 12896 *8 (E.D.N.Y. Jan. 16, 2003) (additional internal citations omitted); *see also Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 598 (5th Cir. 1994) ( explaining "full and

7

fair review" means "knowing what evidence the decision maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.")

Allison asserts that after her claim was denied, First Unum failed to provide her with all of the material on which it had based the denial, to wit, surveillance materials of Allison, so that she could submit written comments and /or rebuttal evidence. Pls. Reply Mem. at 3. In a July 24, 2002 letter to Ms. Allison, Sandra Kaserman does make a reference to "surveillance," with no further details. Def. Ex. B. Nonetheless, full and fair review requires that the plan participant be given an <u>opportunity</u> to examine evidence and comment on it, not that the claim administrator send participants complete claim files as a matter of course. By letter dated June 26, 2002, Ms. Allison was told that she could request copies of documents in her claim file. See Def. Ex. A. And, Allison was aware of the surveillance tape and both had an opportunity to comment on it and did so. In her letter to Ms. Kaserman dated August 2002, Ms. Allison refers to the surveillance and offers an explanation for the range of motion that First Unum inferred from the video. *See* Defs. Ex. B. There is no evidence in the record before the court that Allison ever requested copies of the file or the tape.

Moreover, the exchange of letters between First Unum and Allison demonstrates a recitation by First Unum to Allison of the evidence that it relied on in denying the claim, along with continuing opportunities to Allison to submit additional medical information, which was considered by First Unum. Although plaintiff now states that First Unum "withheld documents" from her, there is no indication of any evidence other than the surveillance materials that were

"withheld." Plaintiff has pointed to no document produced to Ms. Gisonni that Ms. Allison was unaware of during her appeal process, and thus has not met her burden in asking the court to order a remand and review on this ground.

In finding that there is insufficient evidence to demonstrate that Allison did not receive a full and fair review, the court intends no findings as to the correctness of the denial of Allison's claim, merely that she has not provided a legally sufficient basis for a remand. The merits of the denial will be considered by the district judge under the de novo standard, as set forth in the earlier order of this court.

**B.) Reassessment of Allison's Claim:**

The defendants suggest that the plaintiff pursue a reassessment of her claim pursuant to a Regulatory Settlement Agreement entered into by First Unum. *See* Defs' Ex. G. Under the Regulatory Settlement Agreement, the plaintiff could present the October 2003 documents and other new information for First Unum to consider. The parties disagree as to the impact reassessment would have on the plaintiff's claims in this litigation, and the plaintiff also expresses concern that a reassessment would take two years to complete, to her disadvantage. The court takes no position on what course the plaintiff should pursue, and leaves that choice to her. The plaintiff shall inform the court of her decision in writing within one month from the date of this order, so that an Initial Conference can be scheduled if the lawsuit is going forward.

Dated: Central Islip, New York  **SO ORDERED:**
       June 8, 2005

                                                         s/ William D. Wall
                                                         WILLIAM D. WALL
                                                        United States Magistrate Judge